__NOT FOR PUBLICATION__



**FILED**
JAMES J. WALDRON, CLERK

**AUG. 16, 2012**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re:<br><br>**PAUL GLENN VERITY AND JENNIFER LUTHER VERITY,**<br><br>Debtors. | Case No.: 10-20880 (DHS)<br><br>Adv. No.: 10-02373 (DHS)<br><br>Judge:   Hon. Donald H. Steckroth |
| **PAUL GLENN VERITY AND JENNIFER LUTHER VERITY,**<br><br>Plaintiffs,<br><br>v.<br><br>**WELLS FARGO BANK, N.A. dba AMERICA'S SERVICING COMPANY; U.S. BANK, N.A., AS TRUSTEE FOR RASC SERIES 2005 EMX4 TRUST; PHELAN HALLINAN & SCHMIEG, LLP,**<br><br>Defendants. | |

**OPINION**

**APPEARANCES:**

**LAW OFFICES OF ANDY WINCHELL**
Andy Winchell, Esq.
332 Springfield Avenue, Suite 203
Summit, New Jersey 07901
*Counsel for Plaintiffs*

**REED SMITH LLP**
Barbara K. Hager, Esq.
1650 Market Street
2400 One Liberty Place
Philadelphia, Pennsylvania 19103
*Counsel for Defendants*
*Wells Fargo Bank, N.A. dba America's Servicing Company and*
*U.S. Bank, N.A. as Trustee for RASC Series 2005 EMX4 Trust*

**PHELAN HALLINAN & SCHMEIG, P.C.**
Jennifer Novick, Esq.
400 Fellowship Road, Suite 100
Mount Laurel, New Jersey 08054
*Counsel for Defendant*
*Phelan Hallinan and Schmeig, P.C.*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court are opposing motions for summary judgment brought in an adversary proceeding to determine whether Paul and Jennifer Verity ("Debtors") are subject to the Proof of Claim filed by Defendant Phelan Hallinan & Schmeig, LLP ("PHS"), on behalf of Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and U.S. Bank, N.A. ("U.S. Bank") (collectively, the "Defendants"). The Debtors argue that Wells Fargo was not the proper "holder" of the mortgage note and, therefore, does not have the authority to file the Proof of Claim. Similarly, the Debtors assert that U.S. Bank was never a proper holder of the note as a trustee of the trust in which the mortgage was securitized. Furthermore, the Debtors claim that the Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), specifically sections 1692e(3), (10) and 1692f(1).

In defense, the Defendants argue that the Court is precluded from exercising jurisdiction in this matter, as it would violate the *Rooker-Feldman* doctrine by potentially reversing or voiding the state court foreclosure ruling. The Defendants argue further that they were, in fact, the proper holders of the note and that the FDCPA violations are unsupported.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(C). Venue is proper under 28 U.S.C. § 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

**I.     Mortgage Purchase and Bankruptcy Filing**

Paul and Jennifer Verity executed a promissory note ("Note") to Mortgage Lenders Network USA, Inc. ("MLN") on July 28, 2005 in the amount of $370,000, secured by a mortgage on the same date. (Def.'s Stmt. of Facts in Supp. of Mot. for Summ. J. ("Def.'s Facts"), ¶ 1)  On January 29, 2008, the Debtors entered into a loan modification ("Modification") with Defendant Wells Fargo Bank, N.A. d/b/a America's Servicing Company ("Wells Fargo" or "ASC"). (*Id.* at ¶ 9)  Subsequently, the Debtors defaulted under the Note and U.S. Bank, as Trustee for RASC Series 2005 EMX4 Trust, filed a foreclosure complaint in the Superior Court of New Jersey, Chancery Division, Essex County. (*Id.* at ¶ 14)  The complaint was amended on October 27, 2009. (*Id.*)  Phelan Hallinan & Schmeig, LLP ("PHS") represented U.S. Bank in the foreclosure action.  Summary judgment was entered in favor of U.S. Bank in the foreclosure case on February 18, 2010, but awaits entry of final judgment. (*Id.* at ¶ 16)

The Debtors filed a petition for relief on April 12, 2010 pursuant to Chapter 13 of the United States Bankruptcy Code. (Trust's Br. in Supp. of Mot. for Summ. J. ("Trust's Br."), p. 2)  Accordingly, the foreclosure action was stayed. (*Id.*)  The Chapter 13 Plan of Reorganization filed by the Debtors was objected to by PHS on behalf of ASC, servicer for U.S. Bank, on May 7, 2010. (*Id.* at p. 3)  At that time, PHS also filed a Proof of Claim.  The Debtors filed an objection to the claim on May 25, 2010 alleging that "the Debtor does not owe any money to the Creditor or have any relationship with the Creditor." (*Id.*)  An Amended Chapter 13 Plan of Reorganization filed by the Debtors on May 18, 2010 was objected to by the Chapter 13 Standing Trustee. (*Id.*)  The instant Adversary Complaint was filed by the Debtors against Wells Fargo, U.S. Bank, and PHS on October 25, 2010. (*Id.* at p. 3-4)

**II.     Note and Mortgage Transfer**

The loan and servicing rights of MLN were sold to EMAX Financial Group ("EMAX") on August 25, 2005, with MLN becoming the sub-servicer. (*Id.* at p. 5)  EMAX subsequently sold the loan to Residential Funding Company, LLC ("RFC"), while MLN continued to act as the sub-servicer and EMAX as the servicer. (*Id.*)  The loan was also securitized and placed into the name of the Trustee, pursuant to the Pooling and Servicing Agreement ("PSA"). (*Id.*)  The sub- servicing rights were transferred to ASC and "RFC terminated the servicing rights from EMAX" in March of 2007. (*Id.*)   The Mortgage was assigned "by Mortgage Electronic Registration System, Inc. ("MERS"), as Nominee for" MLN and in favor of U.S. Bank. (*Id.* at 6)

The crux of the Debtors' argument questions the sales and transfers of the mortgage as illegitimate due to the lack of evidentiary support. (*See* Pl.'s Mem. in Opp'n to Mot. for Summ. J. ("Pl.'s Mem."), p. 2)  The Debtors also make claims with respect to the securitization of the loan and argue that Wells Fargo is not the legitimate holder of the Note, therefore, making its Proof of Claim invalid. (*Id.*)   In the adversary action, the Debtors seek relief in the form of sanctions for filing an improper proof of claim, damages under the FDCPA, and breach of contract. (Def.'s Facts, ¶ 23)  The Debtors assert that the copy of the Note attached to the proof of claim did not have the allonge affixed, thereby, invalidating the endorsement of said Note. (Compl. of Debtors for Declaratory J. and Damages ("Compl."), ¶ 36)  They further allege that this "constitutes fraud on the Court." (*Id.* at ¶ 58)  The Debtors also claim that neither Wells Fargo nor U.S. Bank was ever the proper holder of the Note and that the Defendants violated sections 105(a) and 506(b) of the Bankruptcy Code and Rule 2016(a) of the Federal Rules of Bankruptcy Procedure. (*Id.* at ¶ 46-49, 52)  The FDCPA claims by the Debtors are, more specifically, violations of §§ 1692e, (3) and (10), and 1692f(1). (*Id.* at ¶ 63)  Last, the Debtors

5

claim that Wells Fargo violated the covenant of good faith and fair dealing implied in loan contracts by improperly charging fees and using a "suspense account." (*Id.* at ¶ 67-68)

## DISCUSSION

### I.  Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*  At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial."  *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)).  "Only evidence admissible at trial may be used to test a summary judgment motion.  Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001)

6

(questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

**II.     The *Rooker-Feldman* Doctrine**

In determining whether the Debtors' claims have any bearing, "[i]t must be determined whether jurisdiction exists before proceeding to the merits of a case." *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 429 (D.N.J. 2009) (citing *Presbytery of New Jersey v. Florio*, 40 F.3d 1454, 1461 (3d Cir. 1994)). The *Rooker-Feldman* doctrine prevents lower federal courts from exercising subject matter jurisdiction in certain circumstances. *In re Washington*, 2012 WL 767863, *4 (Bankr. W.D. Pa. Mar. 7, 2012) (citing *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 651 F.3d 159, 163-64 (3d Cir. 2010)). The doctrine derives from two Supreme Court cases, *Rooker v. Fidelity Trust Co. (In re Rooker)*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman (In re Feldman)*, 460 U.S. 462 (1983). *Rooker* held that parties are prevented "from bringing claims in federal district courts when the plaintiff in federal court seeks to void the state court judgment." *Washington*, 2012 WL 767863 at *4 (citing *Rooker*, 263 U.S. at 416). A federal district court may also be barred from exercising jurisdiction "when the claim is 'inextricably intertwined' with the state adjudication." *Washington*, 2012 WL 767863 at *4 (quoting *Feldman*, 460 U.S. at 486-87).

The interpretation and application of the *Rooker-Feldman* doctrine has, at times, caused confusion amongst courts, as the Supreme Court explained in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283 (2005). The Court stated that "lower courts had, at times, extended the doctrine 'far beyond the contours of the *Rooker* and *Feldman* cases.'" *Washington*, 2012 WL 767863 at *4 (quoting *Exxon Mobil*, 544 U.S. at 283). The purpose of *Rooker-Feldman* is to prevent "state-court losers [from] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments." *Exxon Mobil,* 544 U.S. at 284.  Moreover, the *Rooker-Feldman* doctrine is in place "because such appellate jurisdiction rests solely with the United States Supreme Court." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (citing *Lance v. Dennis*, 546 U.S. 459, 463 (2006).  The Third Circuit further clarified the meaning of *Rooker-Feldman* with its decision in *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*.  The court held that four requirements are to be met: "(1) the federal plaintiff lost in the state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state court judgments;' (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining*, 615 F.3d at 166 (quoting *Exxon Mobil*, 544 U.S. at 284).  The test employed in *Great Western* is meant to prevent courts from applying the *Rooker-Feldman* doctrine too broadly. *Id.*

In the case at bar, the first and third requirements are satisfied as the Debtors lost in state court prior to filing suit in federal court. (*See* Def.'s Facts, ¶ 16,17)  The second and fourth requirements are also satisfied, despite the Debtors' arguments that they are not complaining about "injuries caused by [the] state court judgment" and that they are not attempting to overturn the state foreclosure action. (Pl.'s Mem. at 25)  In essence, by claiming that Wells Fargo is not the proper party to assert a claim, the Debtors attempt to invalidate the state court summary judgment.  If the challenge of Wells Fargo's Proof of Claim were allowed, the net effect would be a reversal of the state foreclosure action, "which is prohibited by *Rooker-Feldman*." *Washington*, 2012 WL 767863 at *7 (citing *In re Agard*, 444 B.R. 231, 244 (Bankr. E.D.N.Y. 2011)).  Similarly, *Washington* and *Agard* dealt with a debtor's challenge to a party's right to assert a proof of claim in regard to a foreclosed property.  Both courts held that a debtor who loses in a state foreclosure action and subsequently attempts to argue in federal court that the

9

party bringing the proof of claim is improper will typically be barred from doing so by the *Rooker-Feldman* doctrine. *See Washington*, 2012 WL 767863 at *7; *Agard*, 444 B.R. at 244.

Without question, the *Rooker-Feldman* doctrine is applicable in bankruptcy cases. Third Circuit courts have held that the *Rooker-Feldman* "doctrine applies equally to federal bankruptcy courts." *Madera*, 586 F.3d at 232 (citing *In re Knapper*, 407 F.3d 573, 582 (3d Cir. 2005)). In *Mayeres v. BAC Home Loans*, 2011 Bankr. Lexis 2793 (Bankr. D.N.J. July 21, 2011), the court applied the *Rooker-Feldman* doctrine to facts strikingly similar to those in the present case. *Mayeres* involved claims of fraudulent mortgage documents and lack of standing to bring a claim in a bankruptcy proceeding. The court held that "the essence of Plaintiff's claim is to reverse the state court judgment." *Id.* at *10. Here, the underlying facts and claims are analogous to *Mayeres*. A ruling in favor of the Debtors would, in effect, be a rejection of the state court judgment. Just as the *Mayeres* court held, this Court "will not, and cannot, review the state court findings as they relate to the validity of [Wells Fargo's] Note and Mortgage." *Id.* Other courts have routinely applied the *Rooker-Feldman* doctrine to bankruptcy proceedings that involve state foreclosure actions as well. *See, e.g.*, *Washington*, 2012 WL 767863; *In re Rusch*, 2010 Bankr. Lexis 4876 (Bankr. D.N.J. Dec. 28, 2010); *Agard*, 444 B.R. 231.

The Debtors further argue that the *Rooker-Feldman* doctrine is inapplicable because the state foreclosure action did not reach a final order. This contradicts Third Circuit precedent. In *Port Authority Police Benevolent Ass'n v. Port Authority Police Department*, 973 F.2d 169 (3d Cir. 1993), the court found that "the interlocutory nature of the . . . state court's order does not preclude the application of the *Rooker-Feldman* doctrine." *Id.* at 178. In a similar vein, "the Third Circuit has held that a default judgment in mortgage foreclosure, prior to any sale, was sufficient to trigger application of *Rooker-Feldman*." *In re Randall*, 358 B.R. 145, 159 n.9

10

(Bankr. E.D. Pa. 2006) (citing *Knapper*, 407 F.3d at 580). The *Mayeres* decision is instructive here as well. There, as in the present case, a state court foreclosure judgment was entered on summary judgment and the debtors filed for bankruptcy prior to entry of a final judgment. *Mayeres*, 2011 Bankr. Lexis 2793 at *3. In bankruptcy court, the debtors argued that *Rooker-Feldman* did not apply because the state court judgment was interlocutory. *Id.* at *10. Just as the court in *Mayeres* held, this Court disagrees with the Debtors' argument and finds application of the *Rooker-Feldman* doctrine both appropriate and required.

### III. The *Younger* Doctrine

Assuming, arguendo, that the foreclosure case has not yet reached a conclusion, the Court still lacks jurisdiction pursuant to the doctrine in *Younger v. Harris*, 401 U.S. 37 (1971). In order to invoke the *Younger* doctrine, three requirements must be met: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate [forum] to raise [the] claims." *Port Auth. Police Benevolent Ass'n*, 973 F.2d at 173 (citing *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989)). If all three requirements are satisfied the court must abstain from exercising jurisdiction, "absent extraordinary circumstances." *Id.*

In *Port Authority Benevolent Ass'n*, the court found that pending state litigation in which the parties had the opportunity to raise their federal claims in the state court easily satisfied the first and third requirements of the *Younger* doctrine. 973 F.2d at 173-74. Importantly, the court noted that the use of the *Younger* doctrine is not barred simply because a remedy was not asserted in the state court in a timely fashion. *Id.* at 174 (citing *Pennzoil v. Texaco*, 481 U.S. 1 (1987)). The second requirement, an implication of important state interests, was analyzed in light of two Supreme Court cases, *Juidice v. Vail*, 430 U.S. 327 (1977) and *Pennzoil*, 481 U.S. 1.

11

The Supreme Court held that the second requirement of the *Younger* doctrine "preclude[s] a federal court from issuing an injunction that would interfere with a state's interest in preserving its courts' ability to enforce judicial orders and judgments." *Port Auth. Police Benevolent Ass'n*, 973 F.2d at 174. By way of example, in *Mayeres*, the court found that New Jersey's interest in determining title to real property was sufficient to satisfy the second requirement. The court in *Beeler Properties, LLC v. Lowe Enterprises Residential Investors, LLC* also held that important state interests are those "which traditionally look to state law for their resolution or implicate separately articulated state policies." 2007 U.S. Dist. Lexis 33434, *8 (D. Colo. 2007) (quoting *Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006)).

In the present case, all three requirements of the *Younger* doctrine are satisfied (assuming the state foreclosure action was not final). The first requirement of the doctrine is met if the foreclosure action is ongoing in the state court. The third requirement is met as well because the state court undoubtedly provides an adequate forum for the Debtors to determine the proper holder of the Note and whether the Mortgage is valid. The Debtors make no claims that they were unable to assert these same issues on appeal of the state foreclosure action. In regard to the second requirement, the state interest is analogous to that in *Mayeres*. New Jersey has an obvious and important interest in determining the proper holder of mortgages and notes for property located within the state and governed by state law. Foreclosure actions are matters closely governed by state law and typically resolved within state courts. There is an important state interest in preserving this system of review, which should be respected.

In the present matter, in light of both the *Rooker-Feldman* and *Younger* doctrines, this Court finds that if the state foreclosure action was final, the *Rooker-Feldman* doctrine is applicable and this Court must abstain from exercising jurisdiction over the matter.

12

Alternatively, if the state foreclosure action is found not to be final, the *Younger* doctrine is applicable and this Court must abstain. In summary, regardless of the whether there has been a final determination in the state foreclosure action, it is inappropriate for this Court to determine the issues presented to the state court.

## IV.    FDCPA Claims and the Proper Holder of the Note

The Debtors assert that the Defendants willfully and maliciously violated the FDCPA, 15 U.S.C. §1692 *et seq.*, through false and misleading representations. (Compl. of the Debtors, ¶ 63-64) The FDCPA was passed in order to protect consumers by "eliminat[ing] abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA goes on to state that "false, deceptive, or misleading representation[s]," or "unfair [and] unconscionable means" may not be used to collect debt. 15 U.S.C. § 1692.

In response to these allegations, the Defendants argue that they are not considered "debt collectors" as defined by the FDCPA. (PHS Memo of Law ("PHS Memo"), p. 9) Defendant PHS asserts that litigation activities by attorneys are not debt collection and are not regulated by the FDCPA. (*Id.* at 9-10) However, PHS cites cases from various states and districts, all of which are inapposite. Not only the Third Circuit, but the Supreme Court as well, has held that attorneys are covered by the FDCPA. *See Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) ("the term 'debt collector' applies to [attorneys] who 'regularly' *through litigation*, tr[y] to collect consumer debts"); *Allen v. LaSalle Bank*, 629 F.3d 364, 367 (3d Cir. 2011) (holding that attorneys are considered debt collectors and, therefore, are covered under the FDCPA regulations). Thus, Defendant PHS is a debt collector in the manner in which the FDCPA intended.

13

In regard to Wells Fargo and U.S. Bank, their status as debt collectors is unclear. It is possible that either Wells Fargo or U.S. Bank is considered a creditor and, therefore, not subject to FDCPA provisions. A creditor is "a person or business who 'offers or extends to offer credit creating a debt or to whom a debt is owed.'" *Siwulec v. Chase Home Finance, LLC*, 2010 WL 5071353, *2 (D.N.J. Dec. 7, 2010) (citing 15 U.S.C. § 1692a(4)). The Seventh Circuit, in elaborating on the exemption for creditors, has stated that "[c]reditors who collect in their own name and whose principal business is not debt collection . . . are not subject to the [FDCPA] . . . [b]ecause creditors are generally presumed to restrain their abusive collection practices . . . ." *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998). Under this analysis, either Wells Fargo or U.S. Bank may be considered a creditor. There is an argument as well that both Defendants may be debt collectors pursuant to the definition of "creditor" in 15 U.S.C. § 1692a(6).[1]

Ultimately, the determination of whether Wells Fargo or U.S. Bank is a debt collector or a creditor is immaterial, as the FDCPA claims are unfounded due to a lack of evidentiary support. The same holds true for PHS, who despite being a valid debt collector, is not liable. The basis of the allegation that the Defendants made "false, deceptive or misleading representation[s]" lies with an assertion that the Defendants were not the proper holders of the Note. This argument is invalid, as the Note is a negotiable instrument[2] and, therefore, the

---

[1] "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6).

[2] Negotiable instruments are defined under N.J.S.A. 12A:3-104 as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on

"holder" of the Note is governed by Article 3 of the Uniform Commercial Code (UCC), codified in New Jersey at N.J.S.A. 12A:3-101. The Debtors argue that the Note is not a negotiable instrument because of the additional non-monetary obligations encompassed within it. This reasoning contradicts New Jersey case law. *HSBC Bank USA, N.A. v. Gouda*, 2010 WL 5128666, at *2-3 (N.J. Super. App. Div. Dec 17, 2010), stated that a right to prepay "does not constitute an 'additional undertaking or instruction' that adversely affects the negotiability of the note." The *Gouda* court went on to hold that a right to prepay is merely voluntary and at the complete discretion of the debtors. *Id.* at *3. The Debtors choose to ignore this precedent and instead cite various cases from Nebraska, Texas, and Tennessee, along with law review articles, none of which are persuasive. The Debtors are unable to provide any case from the Third Circuit or the District of New Jersey to support their contention that the inclusion of an option to prepay destroys the negotiability of the instrument. As was the case in *Gouda*, the Note here is negotiable and, therefore, subject to Article 3 of the UCC.

In determining the proper holder of a negotiable instrument that has transferred from one party to another, N.J.S.A. 12A:3-201(a) states that two elements must be met: (1) "transfer of possession of the instrument;" and (2) "its indorsement by the holder." The indorsement can also be in the form of a "special indorsement."[3] When an instrument is specially indorsed, it

---

demand at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain an undertaking or power to give, maintain, or protect collateral to secure payment, an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or a waiver of the benefit of any law intended for the advantage or protection of an obligor."

[3] "If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a 'special indorsement.' When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person." N.J. Stat. Ann. § 12A:3-205(a).

becomes payable to the party to whom it is indorsed. N.J. Stat. Ann. § 12A:3-205(a). It is undisputed in this case that the Note was specially indorsed to U.S. Bank and is in their possession. This meets the requirements of the UCC. Wells Fargo, therefore, has a right to file a proof of claim and the FDCPA claims are unfounded due to a lack of evidentiary support.

## CONCLUSION

The Court is prevented from exercising jurisdiction pursuant to the *Rooker-Feldman* or *Younger* doctrines over the Debtors' claims. Moreover, the Debtors have failed to present evidence sufficient to support claims of FDCPA violations. Therefore, the Defendants' motion for summary judgment on all counts of the Debtors' Adversary Complaint is hereby granted.

An Order in conformance with this Opinion has been entered by the Court and is attached hereto.

*s/ Donald H. Steckroth*

———————————————————
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: August 16, 2012